UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANA N. ESCOFFIER,

                Plaintiff,

        -v-

CITY OF NEW YORK et al.,

                Defendants.

13-CV-3918 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, United States District Judge:

      Plaintiff Dana Escoffier ("Plaintiff"), proceeding *pro se*, filed the second amended complaint (the "Complaint") in this 42 U.S.C. § 1983 action on February 24, 2014. (Dkt. No. 11.) The Complaint alleges, among other things, that Plaintiff has been denied due process and equal protection of the law, including deprivation of his rights under the First and Fourth Amendments, and has suffered violations of his rights under the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964. The complaint identifies 48 defendants, including the City of New York and officers of the New York City Police Department (collectively, "Defendants"). Defendants now move to dismiss the Complaint pursuant Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion to dismiss is granted in part and denied in part.

I.

      The following facts are drawn from the Complaint and, consistent with the Court's responsibility to liberally construe a *pro se* plaintiff's papers, from Plaintiff's opposition to the motion to dismiss. *See Lovick v. Shriro*, No. 12-CV-7419, 2014 WL 3778184, at *2 (S.D.N.Y. 2014).

Plaintiff alleges that on or about May 12, 2011, one Officer or Detective Bernardes refused to take a complaint concerning an assault that resulted in injury to Plaintiff. (Dkt. No. 11 ¶ 2.) Rather than take the complaint, Bernardes allegedly inquired into Plaintiff's mental health.

Plaintiff also alleges that he made a written complaint on or about February 20, 2012, detailing a number of abuses by the New York Police Department ("NYPD"). (*Id.* ¶ 3.) The NYPD allegedly refused to investigate or follow up on the complaint.

On August 21, 2013, Plaintiff alleges that officers of the NYPD responded to a 911 call reporting a burglary of his home. (*Id.* ¶ 4.) Plaintiff states that Officer Marte "threatened plaintiff with physical harm" and used "aggressively charged words." (*Id.*) Marte then "forced entry" into Plaintiff's home and conducted a search. (*Id.*) In addition, NYPD officers allowed the perpetrator of the burglary to leave the premises with Plaintiff's property.

In what may be an additional incident or an elaboration of Plaintiff's claims concerning the events of August 21, 2013, Plaintiff states that he made a "citizen[']s arrest" of a perpetrator who took property from Plaintiff but that the NYPD did not take the perpetrator into custody. (*Id.* ¶ 6.)

Plaintiff also alleges that, from January 2010 through December 2013, a range of officers discriminated against Plaintiff because of his disability. Plaintiff claims that he was "ridiculed, mimicked and treated with hostility in spite of" the NYPD's "being on notice" that Plaintiff had suffered a traumatic brain injury. (*Id.* at ¶ 5.) Rather than accommodate Plaintiff's disability, officers of the NYPD "deliberately interfered with [P]laintiff's right to make a complaint." (*Id.*)

In addition, Plaintiff alleges that the City of New York and its agents "acted in collusion with a third party Time Equities, Inc[.] / Hudson Street Equities Group" and "conspired . . . to

provoke [P]laintiff to act criminally so as to provide an opportunity to arrest" Plaintiff and thereby "effectuate removal of [P]laintiff from his residence." (*Id.* ¶ 7.)

In his opposition to the motion to dismiss, Plaintiff makes a different set of allegations, which are either inconsistent with the facts alleged in the Complaint or are designed to supplement the Complaint. In short, Plaintiff alleges that on August 13, 2012, he reported a "'break and enter' and illegal occupancy'" on behalf of his deceased mother. (Dkt. No. 90 at 2.) Plaintiff was assured by the NYPD that they would arrest the perpetrator. On or about August 21, 2012, an emergency call was placed to the NYPD and officers again assured Plaintiff that an arrest would be made. Thereafter, Plaintiff continued to request assistance with this matter. (*See, e.g., id.* at 3.) The NYPD asked for, and received, a set of keys to the premises in order to aid in apprehending the suspect. (*Id.* at 4.) Plaintiff alleges that NYPD officers were rude to him. (*Id.* at 5.) On or about March 2, 2013, Plaintiff filed an assault charge with the NYPD, but no arrest was ever made. (*Id.* at 5.) An NYPD officer told Plaintiff that one reason why no arrest was made is that the NYPD did not "know if the assault was on purpose." (*Id.*) When Plaintiff "finally gained access" to the premises in question, he discovered that "the illegal occupant had vacated the premises, but had removed/stolen" property. (*Id.* at 6.)

II.

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint and "draw[] all inferences in

the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (internal quotation marks omitted).  Moreover, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

A.

At the center of Plaintiff's case is the allegation that the NYPD failed, in response to a series of complaints, to arrest the perpetrator of an alleged crime.  Generally, "[t]here is no judicially cognizable right to the prosecution of another individual . . . ." *Bender v. City of New York*, No. 09-CV-3286, 2011 WL 4344203, at *10 (S.D.N.Y. Sept. 14, 2011); *see Laupot v. City of New York*, No. 01-CV-3249, 2002 WL 83673, at *2 (S.D.N.Y. Jan. 18, 2002) ("The failure of the NYPD to respond to plaintiff's complaints is not a constitutional violation."); *Lewis v. New York City Police Dep't*, No. 99-CV-0952, 2000 WL 16955, at *4 (S.D.N.Y. Jan. 10, 2000) ("There is no constitutional right to force an officer to make an arrest."); *see also DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-196 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to government aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive an individual.")  Therefore, even assuming that Plaintiff's allegations are true and the NYPD failed to arrest the perpetrator of a crime against him, these facts do not give rise to a recognized constitutional claim.

Although Plaintiff states his claim in constitutional terms, these allegations could—in light of the liberal construction owed to *pro se* papers—be considered a state tort claim for failure to provide police protection.  Under New York law, although "a municipality may not be

held liable for injuries resulting from a simple failure to provide police protection," *Cuffy v. City of New York*, 505 N.E.2d 937, 939 (N.Y. 1987), there is a narrow exception to this rule "where the City creates a 'special relationship' with the plaintiff," *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 303 (2d Cir. 2003) (citation omitted). "This special relationship can be established in one of three ways: (1) where the City violated a duty commanded by a statute enacted for the special benefit of particular persons; (2) where the City voluntarily assumed a duty, the proper exercise of which was justifiably relied upon by persons benefitted thereby; or (3) where the City assume[d] positive direction and control under circumstances in which a known, blatant and dangerous safety violation exist[ed]." *Id*. at 303 (alterations in original) (citation and internal quotation marks omitted). Potentially relevant here is the second type of special relationship, which requires: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." *Cuffy*, 505 N.E.2d at 940).

Even if the first three prongs of this test were satisfied, Plaintiff has failed to plead allegations sufficient to establish justifiable reliance on the municipality's affirmative undertaking. As *Cuffy* itself explains, reliance on the assurance of a police officer may cease to be reasonable when a plaintiff has an opportunity to observe that the promise has gone unfulfilled. *Id*. at 941-42. Here, Plaintiff alleges a litany of assurances from the police over a period of multiple months, all of which went unfulfilled. (*See, e.g.,* Dkt. No. 90 at 3-5.) Plaintiff should have been quickly disabused of the notion that police intervention was forthcoming. Moreover, there was little to assure Plaintiff beyond the verbal promises of police officers. *See*

*Valdez v. City of New York*, 960 N.E.2d 356, 368(N.Y. 2011) ("[I]t does not follow that a plaintiff injured by a third party is always entitled to pursue a claim against a municipality in every situation where the police fall short of that aspiration."). New York tort law, which must govern this Court's analysis, does not permit Plaintiff's claim as alleged.

Plaintiff's claims based on the NYPD's alleged failure to act in response to complaints are therefore dismissed.

### B.

Plaintiff also alleges a violation of Title II of Americans with Disabilities Act ("ADA") on the ground that NYPD officers refused to allow him to register legitimate complaints and subjected Plaintiff to cruel and hostile remarks because of his disability. Title II prescribes that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of the ADA, the plaintiff must demonstrate that "(1) he is a qualified individual with a disability; (2) the defendant is subject to [Title II]; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability."[1] *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 196-197 (2d Cir. 2014).

Under the statute, a person with a disability is one who "(A) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) [has] a record of such impairment; or (C) [is] regarded as having such an impairment." 42

---

[1] Defendants concede that the City of New York is a subject entity under Title II. (Dkt. No. 82 at 12.)

U.S.C. § 12102(2); *see Widomski v. State Univ. of New York at Orange*, 748 F.3d 471, 474 (2d Cir. 2014).  Aside from passing references to a "traumatic brain injury" suffered by Plaintiff, the Complaint does not allege how Plaintiff's impairment substantially limits his ability to engage in major life activities.  However, read liberally, the complaint adequately alleges that Plaintiff was "regarded as having such an impairment," insofar as it alleges that he was "ridiculed and slandered as to [his] traumatic brain injury" and that Defendants "deliberately interfered with [his] right to make a complaint."  *See Jones v. Target Corporation*, No. 15-CV-4672, 2016 WL 50779, at *5 (S.D.N.Y. Jan. 4, 2016).  (Dkt. No. 11 ¶ 5.)

Defendants argue that Plaintiff has failed to allege that he was "denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability."  *Disabled in Action*, 752 F.3d at 196-197.  But Defendants do not explain why a person's attempt to report allegedly illegal conduct to the police department is not a service, program, or activity subject to the requirement of accommodation under Title II of the ADA.  On the contrary, courts in this district and elsewhere have held that "interactions between law enforcement and disabled individuals— whether initiated by the disabled individual or the police" are subject to Title II.  *Williams v. City of New York*, No. 12-CV-6805, 2015 WL 4660691, at *6 (S.D. N.Y. Aug. 5, 2015) (collecting authorities).

Given the liberal treatment that must be afforded to a *pro se* litigant, Plaintiff has adequately alleged that he was denied the opportunity to make legitimate complaints and was subject to discrimination on the basis of his disability in violation of Title II of the ADA. Moreover, the Complaint sufficiently alleges that any Title II violations Plaintiff suffered were "motivated by either discriminatory animus or ill will due to disability" such that Plaintiff may

7

maintain a "private suit for money damages under Title II." *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001).  In light of this conclusion, Plaintiff may continue to pursue a private remedy claim under Title II.  So too, he may proceed with a claim against the individual defendants under § 1983.[2]  However, because Plaintiff has failed to allege that the events at issue here resulted from a policy, custom, or practice under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978), § 1983 claims against the City of New York must be dismissed.

C.

In his Complaint, Plaintiff alleges that on August 21, 2013, officers of the NYPD responded to a 911 call reporting a burglary of Plaintiff's home, "threatened [P]laintiff with physical harm," and "forced entry" into Plaintiff's home.  (Dkt. No. 11 ¶ 4.)  Forced entry into Plaintiff's home—without a warrant, consent, or exigency—could constitute a violation of the Fourth Amendment and a basis for suit under 42 U.S.C. § 1983.  *See Ryburn v. Huff*, 132 S. Ct. 987, 990 (2012).

Here, Plaintiff has plausibly alleged that Defendants violated his rights under the Fourth Amendment by forcibly entering his home and conducting a search.  As a result, Defendants' motion to dismiss Plaintiff's Fourth Amendment claim is denied.

---

[2]  While Title II does not provide for individual capacity suits against government officials, *Garcia*, 280 F.3d at 107, it is a separate question whether Plaintiff may bring individual capacity claims under § 1983 predicated on Title II violations.  *See Williams v. City of New York*, No. 12-CV-6805, 2015 WL 4660691, at *11 (S.D.N.Y. Aug. 5, 2015) (holding that "a plaintiff can bring a cause of action under § 1983 to enforce rights protected by Title II of the ADA."); *see generally Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 252 (2009) ("If Congress intended a statute's remedial scheme to 'be the exclusive avenue through which a plaintiff may assert [the] claims,' the § 1983 claims are precluded.") (citation omitted). Because neither party has addressed this issue, the Court declines to do so at this juncture.

But because the mere threat of force, without more, does not constitute excessive force, Plaintiff has not stated a plausible claim for excessive force. *Dunkelberger v. Dunkelberger*, No.14-CV-3877, 2015 WL 5730605, at *15 (S.D.N.Y. Sept. 30, 2015) (collecting authorities). Even if a threat of physical harm could, under some circumstances, constitute excessive force—such as a "gunpoint death threat issued to a restrained and unresisting arrestee"—Plaintiff's allegations do not state such a claim. *Mills v. Fenger*, 216 Fed. App'x. 7, 9 (2d Cir. 2006). For this reason, Plaintiff's motion to dismiss the excessive force claim is granted.

D.

Although Defendants argue that claims against all of the individual defendants should be dismissed under the doctrine of qualified immunity, the briefing on this point is wholly conclusory. (See Dkt. No. 82 at 21-22.) While the individual defendants may be entitled to invoke qualified immunity at a later stage of this litigation, the Court cannot at this stage conclude that they are so entitled as a matter of law.

Defendants also argue that "[w]ith the exception of a few individuals, the [Complaint] fails to describe how the multitude of individual defendants named in this action were personally involved in the alleged violations." (Id. at 16.) It follows, in Defendants' view, that the claims against those defendants who are not alleged to have personal involvement should be dismissed. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite of damages under § 1983." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) (citation omitted). "Personal involvement of a supervisory official may be established 'by evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or

9

custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.'" *Id.* at 254-55 (citation and quotation marks omitted).

Because the Court has dismissed all but Plaintiff's ADA and Fourth Amendment claims, any claims against individual defendants who are not plausibly alleged to have been personally involved in an ADA or Fourth Amendment claim must be dismissed. Under this standard, of the many individual defendants named in the Complaint, Plaintiff has pleaded adequate factual allegations concerning the personal involvement of only the following parties: Bernardes, Marte, and Officers John Doe and Jane Doe. (Dkt. No. 11 ¶¶ 2, 4, 5). Claims against all other individual defendants are therefore dismissed.

### E.

Plaintiff asserts three additional claims that can be dealt with quickly. First, although his Complaint makes reference to the First Amendment, the Court can discern no violation of Plaintiff's rights under that provision of the Constitution. (*See* Dkt. 11 at 2.) Second, because Plaintiff is not an employee of the Police Department, any claim under Title VII of the Civil Rights Act of 1964 must necessarily fail. *See* 42 U.S.C. § 2000e-2(a). Finally, Plaintiff alleges that the City of New York and its agents "acted in collusion with a third party Time Equities, Inc / Hudson Street Equities Group" and "conspired . . . to provoke [P]laintiff to act criminally so as to provide an opportunity to arrest" him and thereby "effectuate removal of [P]laintiff from his residence." (Dkt. 11 at ¶ 7.) The threadbare assertion that a conspiracy existed, devoid of

supporting factual allegations, does not meet the standard required to survive a motion to dismiss. As a result, these three claims are dismissed.

### III.

In sum, Defendants' motion to dismiss is GRANTED with respect to claims based on the failure of police to make an arrest in response to his complaints, claims for excessive force and conspiracy, and claims based on the First Amendment and Title VII. The motion to dismiss is DENIED with respect to claims based on possible violations of the ADA and the Fourth Amendment.

The remaining Defendants shall file an answer to the complaint within 30 days of this order.

The Clerk of Court is directed to close the motion at Docket Number 81.

SO ORDERED.

Dated: February 11, 2016
　　　　New York, New York

_____
J. PAUL OETKEN
United States District Judge

COPY MAILED TO PRO SE PARTY